UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STACY STROUD, | ) | |
| | ) | |
| ALISHA RENEE SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER LUCAS STEFFEN, | ) | **PLAINTIFF DEMANDS** |
| in his individual capacity, | ) | **JURY TRIAL** |
| | ) | |
| LINCOLN COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES,
FEDERAL CIVIL RIGHTS STRIP SEARCH VIOLATIONS, AND
STATE LAW STRIP SEARCH VIOLATIONS, AND
SUNSHINE ACT VIOLATION**

Plaintiffs Stacy Stroud and Alisha Renee Shelton, by counsel W. Bevis Schock, state for

their Complaint under 42 U.S.C. § 1983 for Unreasonable Strip Search, under RSMo. 544.193 *et*

*seq.* for Unlawful Strip Search, and under RSMo. 610.010 *et seq.* for State Law Sunshine Act

Violation.

**INTRODUCTION**

1. Stacy Stroud and Alisha Renee Shelton, young women, were strip searched in the

Lincoln County Jail by male Corrections Officer Lucas Steffen. On inference, he

conducted the strip search for sexual gratification. In January 2023, Counsel sent a

Sunshine Act Request to Lincoln County. The County ignored it. Counsel sent several

follow ups. Until late July 2023 Lincoln County ignored all those too. On July 25, 2023,

undersigned counsel received responsive materials.

## PRELIMINARY ALLEGATIONS

### Parties

2.    Plaintiff Stacy Stroud is an individual residing in Lincoln County, Missouri.

3.    Plaintiff Alisha Renee Shelton is an individual currently incarcerated in the Chillicothe Correctional Center.

4.    Defendant Lucas Steffen was at the time of the incident a Corrections Officer for Lincoln County.

5.    Plaintiff sues Defendant Steffen in his individual capacity only.

6.    Defendant Lincoln County is a properly formed political subdivision of the State of Missouri.

7.    Lincoln County is a public governmental body as defined by the Missouri Sunshine Law, RSMo. 610.010, Missouri Const., Art. IV, § 12; Chapter 27 of the Missouri Revised Statutes.

8.    The Lincoln County Sheriff's Department operates the Lincoln County Jail.

9.    Both the Lincoln County Sheriff's Department and the Lincoln County Jail have no independent legal existence but are instead subdivisions of Lincoln County itself.

### Jurisdiction and Venue

10.    Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 and § 1988; and the Fourth Amendment to the United States Constitution.

11.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, with 42 U.S.C. § 1983 and 42 U.S.C. § 1988 being the statutes at issue.

12.    Venue is proper in this Court under 28 U.S.C. § 1391 because the events which occurred are in Lincoln County, Missouri, which is within the Eastern Division of this Court.

13. This court has supplemental jurisdiction over Plaintiff Stroud's state law strip search and Sunshine Act claims pursuant to 28 U.S.C. § 1367.[1]

**Color of State Law**

14. At all relevant times for the federal claims, each Defendant acted under color of state law. Particularly, at all such relevant times, each Defendant acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri.

**Jury Demand**

15. Plaintiff demands a jury trial.

**FACTS**

**Strip Search of Stroud**

16. On October 18, 2021, Stroud had an outstanding warrant from Lincoln County for a new case.

17. Stroud was arrested in St. Louis County and transferred to Lincoln County.

18. During her intake to the Lincoln County Jail, Stroud was physically and electronically searched.

---

[1] RSMo. 610.027.1 states that that Sunshine Act cases "shall be brought in the circuit court for the county in which the public governmental body has its principal place of business." Nevertheless in *Baker v. Bentonville Sch. Dist.*, 75 F.4th 810, 819 (8th Cir. 2023): "Where a federal court has expended time and resources to resolve federal claims, it is both fair to the parties and a proper application of comity for the court to resolve a state law claim derived from a common nucleus of operative fact where the causes of action are not novel and involved well-understood and settled principles of Arkansas law." (Cleaned up, citations omitted). In that case the Eighth Circuit declined diversity jurisdiction because of the amount at stake being less than $75,000 but had no other quarrel with the case being filed in federal court. (As shown by 1990 Missouri Legislation, H.B. 1395 and 1448, at that time the language in RSMo. 610.027 was the same then as now). Finally, the first sentence of RSMo. 610.027.1 states: "The remedies provided by this section against public governmental bodies shall be in addition to those provided by any other provision of law." Plaintiff Stroud suggests this broad language allows this court to take supplemental jurisdiction over her Sunshine Act claim.

19.    Stroud had no contraband.

20.    At all relevant times Stroud was neither combative nor unresponsive.

21.    Stroud's situation was not an emergency.

22.    Stroud was placed in a cell.

23.    The next night, October 19, 2021, exact time unknown, Stroud was called out of her cell by a male Corrections Officer and taken to the booking area.

24.    Near the booking area is a small room.

25.    Officer Steffen took Stroud to that room.

26.    Officer Steffen said he was going to strip search Stroud.

27.    Stroud said the following phrase in an inquisitive manner: "You're going to…?"

28.    Officer Steffen did not respond.

29.    At all times during the following events, Stroud conformed to all Officer Steffen's demands.

30.    Stroud saw Officer Steffen turn his body cam to what she thinks was "Record."

31.    Officer Steffen ordered Stroud to strip naked.

32.    Stroud stripped naked.

33.    Stroud handed Officer Steffen her clothes.

34.    Officer Steffen shook them out and set them down on a chair.

35.    Officer Steffen ordered Stroud to lift her breasts.

36.    Stroud did so.

37.    Officer Steffen ordered Stroud to spread her inner thighs so he could see her private parts.

38.    Stroud did so.

39.    Officer Steffen ordered Stroud to stand up and turn back away from him.

40. Stroud did so.

41. Officer Steffen ordered Stroud bend over, squat, cough, and spread her buttock cheeks.

42. Stroud did so.

43. When she was turned away and bent over, Officer Steffen could again see Stroud's genitalia.

44. On inference, Officer Steffen conducted the strip search of Stroud for:

   a.    His immediate sexual gratification, and/or

   b.    To create a film of Stroud's private parts for his later sexual gratification.

45. Officer Steffen ordered Stroud to get dressed and he left the room.

46. Stroud got dressed.

47. During the incident, Officer Steffen remained 2-3 feet away from Stroud, and he never touched her.

48. Another officer escorted Stroud to the gym.

49. The other female prisoners in the pod, except Plaintiffs, were subjected that night to electronic searches but not to strip searches.

50. One by one the female prisoners were assembled in the gym until all were there, and then all went back to their Pod.

## Strip Search of Shelton

51. On the evening of the strip search of Stroud, Shelton was incarcerated in the Lincoln County Jail.

52. Shelton was facing charges and unable to make bond.

53. That night, at approximately 11:05 p.m., an officer escorted Shelton to the booking area.

54. Shelton had no contraband.

55.     At all relevant times Shelton was neither combative nor unresponsive and the situation was in no way an emergency.

56.     An officer told Shelton that she was being called to the booking area because she needed a new identification card photo.

57.     Officer Steffen told Shelton there was "bad news," that he was going to "strip search" her.

58.     Officer Steffen took Shelton to the same small room near the booking area.

59.     At all times during the following events, Shelton conformed to all Officer Steffen's demands.

60.     Shelton saw Officer Steffen turn his body cam to what she thinks was "Off."

61.     Officer Steffen ordered Shelton to strip naked.

62.     Shelton stripped naked, piece of clothing by piece of clothing, in the order of:  shirt, bra, pants and underwear.

63.     Shelton handed Officer Steffen her clothes.

64.     Officer Steffen told her to raise her arms over her head.

65.     Shelton did so.

66.     Officer Steffen shook out Shelton's clothes and set them down on a chair.

67.     Officer Steffen ordered Shelton to lift her breasts.

68.     Shelton did so.

69.     Officer Steffen told Shelton to lift them higher, which Shelton attempted to do.

70.     While Shelton was naked and facing him Officer Steffen could see her genitalia.

71.     Officer Steffen told Shelton to turn back away from him.

72.     Shelton did so.

6

73. Officer Steffen ordered Shelton bend over, squat, cough.

74. Shelton did so.

75. Officer Steffen ordered Shelton to spread her buttock cheeks.

76. Shelton did so.

77. When she was turned away and bent over, Officer Steffen could again see Shelton's genitalia.

78. On inference, Officer Steffen conducted the strip search of Shelton for:

    a. His immediate sexual gratification, and/or

    b. To create a film of Shelton's private parts for his later sexual gratification.

79. Officer Steffen ordered Shelton to get dressed and he left the room.

80. Shelton got dressed.

81. During the incident, Officer Steffen remained 2-3 feet away from Shelton, and he never touched her.

82. Another officer escorted Shelton to the gym.

### Degrading, Humiliating or Abusive Fashion

83. The strip searches were conducted in a degrading, humiliating or abusive fashion.

### No Safety Purpose or other Penological Purpose

84. On inference there was no safety or penological purpose to the strip searches of Stroud and Shelton, for otherwise all the other female prisoners and not just Stroud and Shelton would have been strip searched.

### Officer Steffen Does Not Return to Work

7

85. On information and belief, based on comments made the next day by employees of the Lincoln County Jail, and later confirmed by Lincoln County officials, as of the day after the incident Officer Steffen no longer worked at the Lincoln County Jail

86. On inference, Officer Steffen left his employment in Lincoln County due to the incident.

**Sunshine Act**

87. On January 4, 2023, undersigned counsel Bevis Schock, by his assistant, sent by email to Tyra Henderson, at lcsocorrections@gmail.com, on information and belief the custodian of records for the Lincoln County Jail, a Sunshine Act request, Ex. 1, seeking:

> All records of the strip search of Stacy Stroud on or about October 19, 2021, which was conducted by a male officer, perhaps Officer Stephenson (sp?).
>
> All records of any investigation of that strip search.
>
> Also, all records of any discipline received by that officer as a result of that strip search.

88. Undersigned counsel received no response.

89. On Friday, January 13, 2023, undersigned counsel sent a follow up email to Henderson noting that a response was overdue and asking Henderson to "please check on this and get back to me," Ex. 2.

90. On January 30, 2023, undersigned counsel, by his assistant, sent by certified mail a copy of the January 4, 2023, Sunshine Act request, Ex. 3.

91. The USPS assigned a tracking number to that request.

92. Undersigned counsel then received an email from the USPS indicating that the envelope had been delivered two days later, "Left with Individual," Ex. 4.

93. On May 30, 2023, undersigned counsel sent by certified mail to Lincoln County a last and final request, specifically stating the penalty for a failure to respond.

8

94. The envelope containing that request came back on June 23, 2023 with the following words: "Refused Return to Sender."

95. On July 25, 2023 undersigned counsel received an envelope containing a zip drive. The contents of the zip drive were two strip search reports of the incident involving Stroud, a letter stating the name of the Defendant and indicating that he had resigned before an investigation could be conducted, and Stroud's other jail records.

96. The contents of the zip drive were a complete response to the Sunshine Act request.

**FOURTH AMENDMENT - UNREASONABLE STRIP SEARCH**

97. The strip searches were unreasonable because they were conducted by a male officer, because the male officer filmed them, and because they had no penological purpose.

98. The right to be free from an unreasonable strip search is well established.[2]

**STATE LAW UNLAWFUL STRIP SEARCH**

99. The right to bring a state law claim for an unlawful strip search is created at RSMo. 544.193&c.

100. These strip searches violated RSMo. 544.193, the Missouri state strip search law. in the following ways:

    a. They were not conducted by a person of the same gender,

    b. On inference, they were not conducted pursuant to permission obtained by the officer in charge,

---

[2] *Robinson v. Hawkins*, 937 F.3d 1128, 1136–37 (8th Cir. 2019), *Kavanaugh v. Edwards*, No. 4:19-CV-3256-MTS, 2023 WL 2072333, at *6 (E.D. Mo. Feb. 17, 2023)

c.  On inference, there was no report prepared stating the name of the person giving Officer Steffen permission to conduct the searches, his name, Stroud's and Shelton's names, and the dates and times of the strip searches, and

d.  Stroud and Shelton did not receive a copy of the reports.

**STATE LAW SUNSHINE ACT VIOLATION**

101.  The records request made by Plaintiff, through counsel, were in all ways legally proper under the Missouri Sunshine Act, RSMo. 610.010, *et seq.*

102.  Missouri's Sunshine Law provides that "all public records of public governmental bodies … be open to the public for inspection and copying," RSMo. 610.011.1-2, and that its provisions in favor of disclosure "be liberally construed and [its] exceptions strictly construed to promote this public policy." RSMo. 610.011.1

103.  Plaintiff requested "public records of [a] public governmental bod[y]" that are required by law to be made "open to the public for inspection and copying." RSMo. 610.011.2.

104.  By ignoring the initial email, a follow-up email, and a certified copy of the request, Defendant Lincoln County committed a knowing and purposeful violation of the Sunshine Act.

105.  The Custodian of Records of the Jail of Defendant Lincoln County received the Sunshine Act requests or consciously refused them.

106.  Plaintiff's Sunshine Act requests are subject to disclosure under the Sunshine Law as "public records," because they are "retained by or of [a] public governmental body," which includes Lincoln County, RSMo. 610.010.6.

107.  The Sunshine Law authorizes the recovery of attorney's fees and costs when a public governmental body knowingly violates its provisions, RSMo. 610.027.3.

108.    The Sunshine Law authorizes the Court to impose a civil penalty if the Court finds that the public governmental body knowingly violated sections of the Sunshine Act, RSMo. 610.027.3.

109.    In the alternative, Lincoln County knowingly violated the Sunshine Law by failing to produce the records to Plaintiff on a timely basis.

110.    Under 610.027 Plaintiff is entitled to $1,000 plus reasonable attorney's fees for a knowing violation of the Sunshine Act.

111.    The purpose of the Stroud's Sunshine Act request was to confirm the details of the facts of Plaintiff's strip search, particularly but not exclusively including whether Plaintiff has the individual Defendant's name correct, and whether that individual was in fact terminated the next day.

112.    On inference, Lincoln County did not take advantage of the safe harbor provision of RSMo. 610.027.6 "to seek a formal opinion of the attorney general or an attorney" regarding whether Lincoln County had to deliver the documents.[3]

## DAMAGES

### Compensatory Damages

113.    At the time of their strip searches and as a result of their strip searches, Stroud and Shelton each suffered garden variety emotional distress, including fear, humiliation and embarrassment.

114.    Neither Stroud nor Shelton has sought treatment from mental health professionals.

115.    Neither Stroud nor Shelton has special damages.

### Punitive Damages Federal Claims

---

[3] *Glasgow Sch. Dist. v. Howard Cnty. Coroner*, 633 S.W.3d 822, 836 (Mo. Ct. App. 2021).

11

116.    The conduct of Officer Steffen in conducting the strip searches was malicious or recklessly indifferent to Plaintiffs' constitutional rights. [4]

117.    The purpose of punitive damages is deterrence and retribution.[5]

118.    That misconduct was unlawful and is capable of repetition, which must be deterred.[6]

119.    An award of a reasonable amount of punitive damages would bear an appropriate relationship to the harm suffered and to damages in similar cases.[7]

120.    Each Plaintiff is entitled to punitive damages against Officer Steffen in his individual capacity for his federal claim against him:  unreasonable strip search.

## Punitive Damages State Law Claim

121.    The strip search of each Plaintiff was outrageous because of Officer Steffen's evil motive or reckless indifference to Plaintiffs' rights.[8]

122.    The right to obtain punitive damages for an unlawful strip search is created at RSMo. 544.195.2

## ATTORNEY'S FEES AND COSTS

123.    In pursuit of their federal claims, Stroud and Shelton are incurring reasonable federal statutory attorney's fees, taxable costs, and non-taxable costs compensable under 42 U.S.C. § 1988.

124.    In pursuit of their strip search state law claims Stroud and Shelton are incurring reasonable state statutory attorney's fees, taxable costs, and non-taxable costs

---

[4] 8th Cir Model Jury Instructions, 4.72.
[5] *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 432 (2001).
[6] *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 416-17 (2003) (quoting *Gore,* fn. 3 *below,* 517 U.S. at 568).
[7] *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574-86 (1996).
[8] MAI 10.01

12

compensable under RSMo. 544.195.2.

125. In pursuit of her Sunshine Act state law claim Stroud is incurring reasonable state statutory attorney's fees, taxable costs, and non-taxable costs compensable under RSMo. 610.027.3.

**COUNT I**
**SECTION 1983 CLAIM**
**BOTH PLAINTIFFS**
**AGAINST CORRECTIONS OFFICER STEFFEN**
**FOR UNREASONABLE STRIP SEARCH**

126. Plaintiffs incorporate all prior paragraphs.

127. *First*, Defendant Steffen strip searched Plaintiffs, and

128. *Second*, the strip search was unreasonable because:

It was conducted in a degrading, humiliating or abusive fashion,[9] and

Plaintiffs are female and Defendant Steffen is male, or

Defendant Steffen filmed the strip searches, or

Defendant Steffen had no safety or penological purpose for the strip searches, or

Defendant Steffen undertook the strip searches for his sexual gratification.

129. *Third*, as a direct result, Plaintiffs were damaged.[10]

130. The conduct of Officer Steffen in conducting the strip searches was malicious or recklessly indifferent to Plaintiffs' constitutional rights.

WHEREFORE each Plaintiff prays for compensatory and punitive damages against Defendant Officer Steffen in his individual capacity for unlawful strip searches in a fair and reasonable amount, for punitive damages in a fair and reasonable amount, and for costs and

---

[9] *Robinson v. Hawkins,* 937 F.3d 1128, 1138 (8th Cir. 2019), citing *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007).
[10] 8th Cir. Model Jury Instructions, 4.40.

reasonable attorney's fees under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT II**
**RSMo. 544.193 CLAIM**
**BOTH PLAINTIFFS**
**AGAINST CORRECTIONS OFFICER STEFFEN**
**FOR UNLAWFUL STRIP SEARCH**

131.   Plaintiffs incorporate all prior paragraphs.

132.   *First*, Defendant Steffen strip searched Plaintiffs, and

133.   *Second*,

Defendant Steffen is male and each Plaintiff is female, or

Defendant Steffen did not obtain permission of the person in command of the jail

to conduct the strip searches, or

Defendant Steffen did not prepare a report of the strip search stating the name of

the person giving Officer Steffen permission to conduct the search, his

name, each Plaintiff's name, and the date and time of the strip searches, or

Defendant Steffen did not give Plaintiffs a copy of such a report.

134.   *Third*, as a direct result, each Plaintiff was damaged [11]

**Punitive Damages**

135.   The strip search of Plaintiffs was outrageous because of Defendant's evil motive or

reckless indifference to Plaintiffs' rights.

WHEREFORE each Plaintiff prays for compensatory and punitive damages against

---

[11] Plaintiffs' state law claims are wholly distinct from their constitutional claims brought under §1983.  Plaintiffs recognize that the state law violation is not *per se* evidence of a Fourth Amendment violation.  *Kraushaar v. Flanigan,* 45 F.2d 1040 (7th Cir. 1995); *Doe v. Burnham,* 6 F.3d 476 (7th Cir. 1993).  There is no Missouri Approved Instruction for state law Strip Search violations, and Plaintiffs base the paragraphs in this count on MAI 17.01.

14

Defendant Officer Steffen in his individual capacity for strip searches in violation of state law in a civil penalty of $1,000.00, compensatory damages in a fair and reasonable amount, for punitive damages in a fair and reasonable amount, and for costs and reasonable attorney's fees under RSMo. 544.195, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT III**
**RSMO. 610.010 STATE LAW CLAIM**
**PLAINTIFF STROUD**
**AGAINST LINCOLN COUNTY**
**FOR SUNSHINE ACT VIOLATION**

136.    Plaintiff Stroud incorporates all prior paragraphs.

137.    *First*, Plaintiff Stroud, acting through her attorney, made lawful Sunshine Act requests to Defendant Lincoln County regarding her strip search,

138.    *Second*, Defendant Lincoln County did not respond to the Sunshine Act requests on a timely basis,

139.    *Third*, Lincoln County officials were aware of their duty to respond to a proper Sunshine Act request,

140.    *Fourth,* in failing to respond on a timely basis Lincoln County knowingly violated the Sunshine Act,

141.    *Fifth*, for this knowing violation Plaintiff is entitled to a civil penalty of $1,000,00 and the court may order attorney's fees and costs.

142.    The meaning of the terms "knowing" is a question of law, but "[w]hether the conduct of the city brings it within the scope of the statutory definitions of knowing conduct is a question of fact.[12]

WHEREFORE, Plaintiff Stroud prays for judgment in her favor, declaring that records

---

[12] *Wyrick v. Henry*, 592 S.W.3d 47, 58 (Mo. Ct. App. 2019)

requested by her, through counsel, are open records under the Sunshine Law; finding Lincoln

County knowingly violated the Sunshine Law; and ordering Lincoln County to pay Plaintiff's

attorney's fees and costs, along with a civil penalty of $1000.00 for the knowing violation, and

for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Counsel for Plaintiff

   /s/ W. Bevis Schock  .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322